**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **United States of America,** | |
| **v.** | **Case No. 12-cr-014-APM** |
| **Oscar Ortega-Hernandez,** | |
| **Defendant.** | |

**MOTION FOR RECONSIDERATION**

Mr. Ortega-Hernandez, through counsel, respectfully requests that the Court reconsider

its denial of his § 2255 motion in ECF Nos. 136 and 137 for at least two reasons:  First, the Court

overlooked that placing "the life of any person . . . in jeopardy" in 18 U.S.C. § 1363 lacks a

sufficient *mens rea* to qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(A).  Separately,

the Court appeared to overlook several cases illustrating that the enhanced penalty provision—

triggered by "if the building be a dwelling, or the life of any person be placed in jeopardy"—is a

single, indivisible element.[1]  Both issues independently undermine this Court's ultimate holding

that § 1363 is a crime of violence, warranting reconsideration.

> **1. Reconsideration is necessary because the Court overlooked that § 1363's penalty provision requiring placing "the life of any person [] in jeopardy" lacks a sufficient *mens rea* to qualify as a crime of violence.**

The first reason that reconsideration is necessary is that the Court based its crime of

violence determination on § 1363's enhanced penalty provision that requires placing "the life of

---

[1] The government largely conceded these two issues, as it never responded to Mr. Ortega's arguments on *mens rea* and stated only that it "does not agree" with his argument on divisibility with no further discussion.  *See, e.g.*, ECF No. 122 at 32 n.6.

any person . . . in jeopardy." ECF No. 132 at 11. According to the Court, the element of "[p]utting 'the life of any person in jeopardy' necessarily requires the 'use of physical force against the person . . . of another' for purposes of § 924(c)(3)(A)." *Id.* at 9. Respectfully, this is not so.

As mentioned in the opening brief, putting the life of any person in jeopardy cannot transform § 1363 into a crime of violence because it lacks a sufficient *mens rea*. The government implicitly conceded this point, as it offered no response to Mr. Ortega-Hernandez's argument in his opening brief. And the government has expressly conceded this point in other cases with analogous statutes. For example, it conceded that the federal arson statute, 18 U.S.C. 844(i),[2] which has a similar enhanced penalty structure, does not qualify as a crime of violence. *See* § 844(i) (authorizing enhanced penalties if "death" or "personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection"); *United States v. Salas*, 889 F.3d 681, 684 (10th Cir. 2018); *see also* Brief for United States, *United States v. Salas*, No. 16-2170, 2017 WL 1830328 (10th Cir. May 3, 2017) ("The United States does not assert that § 844(i) qualifies as a crime of violence under the elements clause of § 924(c)."). It also conceded that federal kidnapping resulting in death, 18

---

[2] Section 844(1) provides: "***Whoever maliciously damages or destroys, or attempts to damage or destroy***, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both; and ***if personal injury results to any person***, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; and ***if death results to any person***, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment." *Id.* (emphasis added).

2

U.S.C. § 1201, which has a similar enhanced penalty structure, does not qualify as a crime of violence. *See* § 1201 (authorizing enhanced penalties "if the death of any person results"); *United States v. Ross*, Nos. 18-2800 & 18-2877, 2022 WL 4103064 (8th Cir. Sept. 7, 2022) ("In light of the government's position that kidnapping resulting in death is not a crime of violence under *Borden*. . . the convictions and sentences on Count 3 are vacated."). If the government had adopted this Court's rationale—which respectfully conflicts with Supreme Court precedent (discussed below)—it is doubtful that it would have made these concessions.

To commit the substantive § 1363 offense, the defendant must act "willfully and maliciously" with respect to destroying property—a sufficient *mens rea*. But to trigger the enhanced penalty through putting "the life of any person in jeopardy," there is no *mens rea* requirement at all. That is, § 1363's sentencing enhancement imposes strict liability—an insufficient *mens rea*. *See cf. United States v. Soler*, 275 F.3d 146, 152-53 (1st Cir. 2002) (finding that similar language in 21 U.S.C. § 841(b)(1)(C)—which increases the statutory sentencing range for certain drug offenses "if death or serious bodily injury results"—imposes "strict liability"). As noted in the opening brief, someone could commit arson, not realizing someone is inside. Or someone could shoot at a building under the false belief that the building is vacant. In both situations, the defendant could trigger the enhanced penalty provision of putting "the life of any person in jeopardy" with at most an accidental or negligent *mens rea* relating to the force used against the person.

This matters because, when dealing with force against a person, the elements clause demands a single element that simultaneously requires the (1) intentional or knowledgeable (2) use of "violent physical force" "against the person . . . of another." *See Borden v. United States*,

141 S. Ct. 1817, 2822 (2021).  According to the Supreme Court, "the phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his attention at, or target, another individual."  *Id.* at 1825.  Recklessness failed to satisfy this threshold requirement because such conduct involves "indifference" to the risk of others, *id.* at 1830, and therefore does not require the "targeting" or "directedness," *id.* at 1826, that is necessary to satisfy the "oppositional" meaning of the phrase "against the person of another."  *Id.*  That phrase requires a "conscious object (not [a] mere recipient) of the force," *id.* at 1826—someone the force is "aimed" at and a "whom" to which the conduct is "consciously directed."  *Id.* at 1825-26.  In short, to qualify as a crime of violence involving force against people, the force clause requires "***a deliberate choice of wreaking harm on another***," not conduct that accidentally or recklessly wreaks harm on another.  *Id.* at 1830 (emphasis added).

But § 1363's enhanced penalty provision of putting the life of someone in jeopardy requires no such thing.  There is no oppositional targeting requirement against the person. Putting someone's life in jeopardy can involve merely accidental, negligent, or reckless uses of force against the person.  The Supreme Court in *Leocal* and *Borden* made clear that this is insufficient.  As such, the enhanced penalty provision involving placing "the life of any person . . . in jeopardy" cannot transform a § 1363 offense into a crime of violence.

Because the Court appeared to overlook the enhanced penalty provision's insufficient *mens rea* as it relates to force against a person, Mr. Ortega-Hernandez respectfully requests that the Court reconsider its ruling and address the question relating to force against property on the merits.  *See* ECF No. 136 at 11 (noting "[t]he court need not decide, however, whether destroying or injuring a dwelling is categorically a crime of violence—e.g., what if a defendant

4

were convicted under § 1363 of only spray painting the White House?").  The merits will require this Court to determine not only whether conduct as minimal as "spray painting the White House" can qualify as a crime of violence, *id.* at 12, but also whether pure economic damage to property is sufficient given that § 1363's broad statutory language of "injur[ing] any . . . property" would ensnare that conduct as well.

### 2. Reconsideration is further necessary because the Court's divisibility analysis appeared to overlook material cases.

Reconsideration is necessary for a second independent reason: the Court's divisibility analysis appears to be mistaken.  In Mr. Ortega-Hernandez's opening brief, he cited to multiple cases from this District and others showing that the enhanced penalty provision—which applies when "the building be a dwelling, or the life of any person be placed in jeopardy"—was a single indivisible element.  *See* ECF No. 132 at 10 (citing to *United States v. Al-Imam*, 373 F. Supp. 3d 247, 267 (D.D.C. 2019); Final Jury Instructions, *United States v. Al-Imam*, Case No. 17-cr-213, ECF No. 191 (D.D.C. June 4, 2019); Final Jury Instructions, *United States v. Khatallah*, Case No. 14-cr-141, ECF No. 464 (D.D.C. Nov. 15, 2017); *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, § 1363, at 292-93 (2019)).[3]  The government provided no genuine argument or citations to suggest otherwise.  *See* ECF No. 122 at 32 n.6.[4]

In *Khatallah*, for example, Judge Cooper instructed the jury that the government must

---

[3] Available at http://www.scd.uscourts.gov/pji/PatternJuryInstructions.pdf.

[4] The government's only argument was in a footnote stating the following: "The government does not rely for purposes of these proceedings on what defendant calls the 'third element' of an aggravated § 1363 violation – *i.e.*, that 'the building be a dwelling, or the life of any person be placed in jeopardy.' 18 U.S.C. § 1363. Defendant argues that this element is not divisible under the modified categorical approach, and the government does not agree.  However, the Court need not reach that issue in order to deny defendant's § 2255 motion, for all of the reasons addressed above."  ECF No. 122 at 32 n.6.

prove the following to establish a § 1363 violation:

1. the defendant injured or destroyed, or attempted to injure or destroy, or aided and abetted another to do the same, or participated in a conspiracy to injure or destroy, any structure, conveyance, or other real or personal property;

2. that the property was within the special maritime and territorial jurisdiction of the United States;[5]

3. the defendant acted willfully and maliciously; and

4. ***the building was a dwelling or the life of any person was placed in jeopardy.***

*Khatallah*, Case No. 14-cr-141, ECF No. 464 at 27 (emphasis added). The other cited instructions from above similarly group the dwelling component and the life in jeopardy component as a single element.

By instructing the jury that the enhanced penalty provision constitutes a single element, these cases make plain that the jury need not unanimously agree whether the building was a dwelling or the life of any person was placed in jeopardy. Rather, injuring a dwelling or placing lives in jeopardy are merely two alternative means of committing the enhanced offense. Or put differently, the enhanced penalty provision is "indivisible."

This Court relied upon *United States v. Khatallah*, 41 F.4th 608, 632 (D.C. Cir. 2022), and *Mathis v. United* States, 136 S. Ct. 2243 (2016), to find that that the enhanced penalty provision is divisible, but neither case support this view. In *Khattallah*, no party raised, and the

---

[5] "To bring Khatallah's offense within the special jurisdiction, the government relied only on the diplomatic premises definition of the special jurisdiction. 18 U.S.C. § 7(9). . . .The diplomatic definition of the special jurisdiction has two parts as relevant here: (1) the crime has to take place on the premises of a diplomatic or military facility, and (2) it has to be an 'offense committed by or against a national of the United States.'" *United States v. Khatallah*, 41 F.4th 608, 624 (D.C. Cir. 2022) (quoting *id.*).

D.C. Circuit did not consider, the divisibility of the enhanced penalty provision.  *See id.*[6]; *see also*

*Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither

brought to the attention of the court nor ruled upon, are not to be considered as having been so

decided as to constitute precedents.").  Indeed, the trial court in *Khatallah* instructed the jury

that it did ***not*** have to unanimously find that the defendant injured a dwelling or put someone's

life in jeopardy because it included these two means of committing the aggravated offense as a

single element.  *See Khatallah*, Case No. 14-cr-141, ECF No. 464 at 27.  That is, contrary to this

Court's finding, some number of jurors *could* have concluded that Mr. Khatallah destroyed a

dwelling, while others could have found that his conduct placed the life of a person in jeopardy.

*Compare id.*, *with* ECF No. 136 at 12 n.6.  If the D.C. Circuit disagreed with that analysis, it would

have said something.  It did not.

　　*Khatallah*'s only reference to the enhanced penalty provision had nothing to do with the

element's divisibility, but rather with whether the government could prove special jurisdiction

where a person's life had been put in jeopardy.  *See* 41 F.4th at 625-26.  Answering the special

jurisdiction question, however, is irrelevant to the divisibility question, as it does not even involve

the categorical approach; rather, "whether an offense is 'committed by or against a national of

the United States' is determined by the facts of the charged offense, not by the offense's legal

---

[6] *Khatallah* addressed a separate divisibility issue: as Mr. Ortega-Hernandez previously acknowledged, the penalty structure sets forth a divisible statute between the substantive offense (carrying a 5-year maximum penalty) and aggravated offense (carrying a 20-year maximum penalty), *see* ECF No. 112 at 9-10; it further sets forth a divisible statute between conspiracy and substantive offenses, *Khatallah*, 41 F.4th at 632.  But there is nothing to suggest that Congress intended to create *additional* crimes that are further divisible down to each individual alternative phrase.  *See Mathis*, 136 S. Ct. at 2249 (noting a statute is "divisible" if it "list[s] elements in the alternative, and thereby define[s] multiple crimes").

elements." *Id.* at 626-27.  Thus, this Court's observation that the D.C. Circuit in *Khatallah* "treat[ed] separately the 'placing a person in jeopardy' and 'dwelling' components of § 1363 as 'elements' of the offense for purposes of determining whether the offense occurred within the special jurisdiction of the United States" was misplaced.  ECF No. 136 at 12.  That jurisdictional analysis involves a fact-based approach, not the categorical approach that applies here.

The Court also relied upon *Mathis v. United* States, 136 S. Ct. 2243 (2016), but that case does not support a divisibility finding either.  *See* ECF No. 136 at 12-13.  In *Mathis*, the Supreme Court recognized a hierarchy of three methods of determining the divisibility of a statute, in declining order of persuasiveness:  First, look to court decisions to see if they have held that a particular statute lists various means of committing an offense, such that a jury need not agree unanimously on the issue.  *See* 136 S. Ct. at 2256.  Second, look to the statutory language to determine if "statutory alternatives carry different punishments"—if they do, then they must be elements, making the statute divisible.  *See id.*  Third, as a means of last resort, "in the absence of 'clear answers' from case law and other sources," *United States v. Diaz*, 865 F.3d at 117 (4th Cir. 2017), "peek at the record documents [] for the sole and limited purpose of determining whether the listed items are elements of the offense." *Mathis*, 136 S. Ct. at 2256-57 (cleaned up).

As this Court properly recognized, the key to distinguishing indivisible and divisible statutes lies in what the law says the jury must find unanimously to return a conviction.  *See Descamps v. United States*, 133 S. Ct. 2276, 2288 (2013).  If a fact need not be found unanimously, then it is merely one "means" of committing the offense and the statute is indivisible.  *See id.* But if unanimity is required, then it is an "element," and the statute is divisible.  *See id.* Ultimately, if there is any ambiguity in the statute, it must be resolved in favor of indivisibility.

*Mathis*, 136 S. Ct. at 2257.  Divisible statutes are the exception, not the rule.  *See, e.g., Descamps*, 133 S. Ct. at 2283 (statutes divisible in "narrow range of cases"); *United States v. Sheffield*, 832 F. 3d 296, 314 (D.C. Cir. 2016) (statutes divisible in "rare instances").

In this case, all three *Mathis* factors confirm that § 1363's penalty enhancement provision is a single indivisible element.  **First**, as shown above, the cited jury instructions show it is an indivisible element because they consistently group "dwelling" and placing the "life of any person . . . in jeopardy" as a single element.  This appears to be the unanimous view, as the government has never provided a case or argument to suggest otherwise.  *See* ECF No. 122 at 32 n.6.

**Second**, the statute's penalty structure further confirms the offense is indivisible because it provides a single enhanced maximum penalty of 20 years that does not depend on whether the defendant injured a "dwelling" or placed "the life of any person . . . in jeopardy.  *See* § 1363.  Thus, the terms do not create "two different offenses, one more serious than the other."  *Mathis*, 136 S. Ct. at 2249; *id.* at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements.").  Instead, they each define an equally serious way of committing the more serious offense punishable by an enhanced penalty.

**Third**, the indictment and plea agreement only further confirm that the offense is indivisible, as they charged Mr. Ortega-Hernandez with injuring a dwelling and placing lives in jeopardy in a single count (rather than one or another in two separate counts).  *See* Superseding Indictment, ECF No. 17 at 2-3 (charging Mr. Ortega-Hernandez with destroying "a dwelling, that is the White House, and plac[ing] the lives of person in jeopardy"); Plea Agreement, ECF No. 53 at 1 (pleading to the charge of "Injury to a Dwelling and Placing Lives in Jeopardy");

9

Statement of Facts, ECF No. 54 at ¶¶ 12, 18 (discussing how the area of the White House was a dwelling).  A statute is "divisible" if it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis*, 136 S. Ct. at 2249.  The superseding indictment and plea documents make clear that Mr. Ortega-Hernandez was not charged or convicted of "multiple crimes" under § 1363.

Simply put, there is no *Mathis* factor that supports a divisibility finding.  And the government has never provided any substantive argument suggesting otherwise.  As such, Mr. Ortega-Hernandez respectfully submits that the Court's divisibly analysis was mistaken, which provides an additional basis for reconsideration.

Respectfully submitted,

A. J. KRAMER
Federal Public Defender

_____/s/_____
BENJAMIN FLICK
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004