**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-cr-00014 (APM)** |
| | ) | |
| **OSCAR RAMIRO ORTEGA-HERNANDEZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION</u>**

**I.**

Defendant Oscar Ramiro Ortega-Hernandez seeks reconsideration of the court's order denying his motion to vacate his conviction under 18 U.S.C. § 924(c). Because the court continues to believe that Defendant's predicate conviction under 18 U.S.C. § 1363 constitutes a "crime of violence," the motion for reconsideration is denied.

**II.**

**A.**

On September 18, 2013, Defendant admitted to having fired a high-powered rifle that struck the White House eight times, which endangered the lives of multiple Secret Service agents. Stmt. of Offense, ECF No. 54 [hereinafter Stmt. of Offense]. He pleaded guilty to two offenses. The first offense was causing "Injury to a Dwelling and Placing Lives in Jeopardy within the Special Maritime and Territorial Jurisdiction of the United States" in violation of 18 U.S.C. § 1363. Plea Agreement, ECF No. 53, at 1 [hereinafter Plea Agreement]. The text of § 1363, as pertinent here, provides that "[w]hoever . . . willfully and maliciously destroys or injures any structure . . . shall be . . . imprisoned not more than five years . . . and if the building be a dwelling, or the life

of any person be placed in jeopardy, shall be . . . imprisoned not more than twenty years[.]"  18 U.S.C. § 1363.  Because Defendant admitted to "injur[ing] a dwelling" and "placing lives in jeopardy," he was subject to a 20-year maximum sentence.  Stmt. of Offense ¶¶ 18–20.  The second offense was "Using, Carrying, and Discharging a Firearm During Crime of Violence," in violation of 18 U.S.C. § 924(c).  Plea Agreement at 1.  That crime carries a 10-year mandatory, consecutive sentence.  18 U.S.C. § 924(c)(1)(A)(iii), (D)(ii).

At the time of Defendant's sentencing, a "crime of violence" was defined as a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(A–B) (2018).  These subsections are commonly referred to as the "elements clause" and the "residual clause," respectively.  By pleading guilty to a § 924(c) offense, Defendant implicitly acknowledged that a violation of § 1363 was a "crime of violence," though the plea agreement did not specify the applicable clause.  Plea Agreement at 1–2.

In March 2014, then-assigned Judge Rosemary M. Collyer sentenced Defendant to 15 years for the predicate § 1363 offense and 10 years for the conviction under § 924(c).  Judgment, ECF No. 78, at 3.  As required, the terms of imprisonment were to run consecutively.  *Id.*

**B.**

In 2015, the United States Supreme Court decided *United States v. Johnson*, 576 U.S. 591 (2015).  The Court there held that the residual clause under the Armed Career Criminal Act, 18 U.S.C. § 924(e), which is worded similarly to the one in § 924(c), was unconstitutionally vague in violation of the Due Process Clause.  *Johnson* prompted Defendant to file a pro forma motion seeking to vacate his § 924(c) conviction in June 2016, which he promised to later supplement.

*See* Def.'s Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. 108. The Supreme Court then decided *United States v. Davis*, 139 S. Ct. 2319 (2019), in which the Court extended its holding in *Johnson* to § 924(c) and struck down its residual clause. *Id.* at 2324. As a result of *Davis*, all that remained of § 924(c)(3)'s definition of "crime of violence" was the elements clause.

Defendant thereafter filed his supplemental brief. He claimed that, after *Davis*, his conviction under § 924(c) could no longer be sustained, because § 1363 did not meet the definition of "crime of violence" under the elements clause. Def.'s Suppl. Mot. to Vacate Under 28 U.S.C. § 2255, ECF No. 112 [hereinafter Def.'s Suppl. Mot.], at 4–5. The government opposed the motion, arguing that Defendant had waived objections to the sentence by entering into a plea agreement, and that the substantive offense under § 1363 is a "crime of violence" under the elements clause. U.S.' Opp'n to Def.'s Suppl. Mot., ECF No. 122, at 1–2.

After the parties briefed the motion to vacate, the D.C. Circuit decided *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022). As here, the defendant in *Khatallah* committed a 20-year felony under § 1363 that served as the predicate felony for his corresponding conviction under § 924(c). Khatallah argued on appeal that a violation of § 1363 was not a "crime of violence" because it could be committed by a conspiracy, which requires no violent force. *Id.* at 632–33. The D.C. Circuit disagreed. It held that "[s]ection 1363 is divisible," meaning that the statute contains distinct substantive and conspiracy offenses. *Id.*[1] Khatallah did not, however, dispute that a substantive violation of § 1363 is a "crime of violence," so the court affirmed his § 924(c) conviction. *Id.* It thus remains an open question in this Circuit whether a substantive violation of § 1363 is categorically a "crime of violence." *See* Mem. Op. re: Def.'s Mot. Under 28 U.S.C.

---

[1] This ruling resolved Defendant's lead argument in his supplemental brief. *See* Def.'s Suppl. Mot. at 10–12.

§ 2255 to Vacate, Set Aside, or Correct Sentence & Def.'s Suppl. Mot., ECF No. 136 [hereinafter Mem. Op.], at 7–8.

This court then ruled on the motion to vacate. Although the court agreed with Defendant that the motion was not procedurally barred, it disagreed on the merits. The parties had framed the merits question as whether the base, five-year destruction of property offense under § 1363 was a "crime of violence." *Id.* at 10–11. The court did not reach that question, however, because it noted that Defendant was convicted of the 20-year offense of "placing lives in jeopardy." *Id.* at 9. That offense, the court held, was categorically a "crime of violence" because putting "the life of any person in jeopardy necessarily requires the use of physical force against a person[.]" *Id.* The court thus sustained Defendant's conviction under § 924(c). *Id.* at 9–10.

As part of its reasoning, the court recognized that Defendant had also admitted to causing "injury to dwelling," which—at least under Defendant's theory—could be committed without the requisite degree of force needed to qualify as a "crime of violence." *Id.* at 10–12 (questioning whether a person who merely "spray paint[ed] the White House" could be charged with a 20-year offense). The court held, however, that the "'dwelling' component of § 1363 is an alternative element of the enhanced penalty provision, not a different means of committing the offense." *Id.* at 12. In other words, the two enhancement provisions were separate crimes, not alternative ways of committing a single 20-year offense. *Id.* at 12 n.6.

Defendant then filed the present motion seeking reconsideration of the court's ruling. Def.'s Mot. for Recons. re: Order on Mot. to Vacate, ECF No. 138 [hereinafter Def.'s Mot.].

**III**.

The Federal Rules of Criminal Procedure do not expressly permit a motion for reconsideration. However, in this District, courts routinely entertain such motions in criminal

cases, applying the standard of review articulated in Federal Rule of Civil Procedure 59(e), where the motion seeks to alter or amend a judgment. *United States v. Cabrera*, 699 F. Supp. 2d 35, 40 (D.D.C. 2010) (collecting cases); *cf. United States v. Caldwell*, No. 21-cr-28 (APM), 2022 WL 203456, at *1 (D.D.C. Jan. 24, 2022) (applying the standard for reconsideration articulated in Rule 54(b) to a motion to reconsider an interlocutory judgment in a criminal case).

Rule 59(e) "provides a limited exception to the rule that judgments are to remain final." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018). Reconsideration "'is discretionary' and need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *National Trust v. Dep't of State,* 834 F. Supp. 453, 455 (D.D.C. 1993)). A motion for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2810.1 (3d ed. 1998) (footnotes omitted).

**IV.**

Defendant submits two reasons for the court to reconsider its ruling. First, he asserts that that § 1363's sentencing enhancements are not *elements*, as the court concluded, but two different *means* of violating the statute's 20-year penalty provision. And, because the least culpable means of committing a 20-year offense—injuring a "dwelling"—does not require violent force, even an enhanced-penalty conviction under § 1363 is not categorically a "crime of violence." Def.'s Mot. at 5–10. Second, Defendant argues that a violation of the enhanced-penalty provision under § 1363 requires no particular mens rea, meaning that a person can be held strictly liable for the greater

5

sentence. This, Defendant contends, disqualifies the 20-year felony from service as a predicate "crime of violence" under *Borden v. United States*, 593 U.S. 420 (2021). *Id.* at 1–5.

Defendant raised both of these arguments in his motion to vacate. Def.'s Suppl. Mot. at 14–15. The court addressed the first of them, Mem. Op. at 12–13 (concluding that the "dwelling component of § 1363 is an element"), but not the second. In any event, the court now considers both issues de novo. *See United States v. Bagcho*, 227 F. Supp. 3d 28, 31 (D.D.C. 2017) (applying de novo review to motion for reconsideration).

## A.

### 1.

To be a "crime of violence" under § 924(c)'s elements clause, a felony offense must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). Courts use the categorical approach to determine whether a federal offense qualifies as a crime of violence. The first step under this paradigm is to identify the elements of the offense of conviction. *Descamps v. United States*, 570 U.S. 254, 258 (2013). This focus on elements means that "the particular facts of the case" are not relevant. *Mathis v. United States*, 579 U.S. 500, 504 (2016). With the elements in hand, the court then must "presume that the defendant's conviction 'rested upon nothing more than the least of the acts criminalized.'" *Khatallah*, 41 F.4th at 631 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (cleaned up)). If the predicate felony "has a single, indivisible set of elements" that does not require a defendant to have used, attempted, or threatened force, the offense is not a "crime of violence" for purposes of § 924(c). *Descamps*, 570 U.S. at 258.

Some statutes "list elements in the alternative, and thereby define multiple crimes." *Mathis*, 579 U.S. at 505. These are known as "divisible" statutes, and as to them courts apply a

"modified categorical approach," which permits consideration of a "limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505–06. "The court can then . . . compare the elements of the crime of conviction (including the alternative element used in the case) with the" requirements of § 924(c)(3), to determine whether the least culpable conduct permitting a conviction for that predicate offense is a "crime of violence." *Descamps*, 570 U.S. at 257. "If the relevant documents establish 'with legal certainty' that the conviction was for a crime of violence, the conviction may be used as a predicate offense." *Khatallah*, 41 F.3d at 631 (quoting *Mathis*, 579 U.S. at 515 n.6).

Other statutes, in contrast, identify "various factual means of committing a single element." *Mathis*, 579 U.S. at 506. For such statutes, the court "may not consider how the defendant committed the offense." *Khatallah*, 41 F.4th at 631. "If any of the means does not require the use, attempted use, or threatened use of physical force against the person or property of another, then the offense is not a crime of violence." *Id.* at 631–32.

**2.**

The crux of Defendant's first challenge rests on the view that § 1363's 20-year penalty provisions are not, as the court concluded, separate *elements*, Mem. Op. at 12–13, but different *means* of committing the offense, Def.'s Mot. at 5–10. In other words, he contends that the penalty provision of § 1363 is indivisible. Viewing the sentencing enhancement as one element, Defendant argues, because the "least of the acts" that would subject a person to a 20-year penalty— destroying or injuring a "dwelling"—can be committed through non-violent force, his offense of conviction does not categorically qualify as a "crime of violence." Reply in Supp. of Def.'s Mot., ECF No. 142 [hereinafter Def.'s Reply], at 9–10.

7

"'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant, and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Mathis*, 579 U.S. at 504 (quoting Black's Law Dictionary 634 (10th ed. 2014)) (citations omitted). "Facts, by contrast, are mere real-world things—extraneous to the crime's legal requirements. . . [T]hey need neither be found by a jury nor admitted by a defendant." *Id.*

For starters, in this case, there is no dispute that the 20-year enhancement provision—whether divisible or not—is an element of the offense. As the D.C. Circuit has recognized, while "[s]ome violations of Section 1363 may be exclusively property crimes," the statute "also creates an enhanced offense that can be committed by destroying property in a way that places a life in jeopardy" and thus "placing a person in jeopardy is an element of the offense[.]" *Khatallah*, 41 F.4th at 625.[2] A jury would need to make a beyond-a-reasonable determination for either aggravating factor to apply. *See United States v. Davis*, 202 F.3d 212, 217 (4th Cir. 2000) (holding that § 1363's "statutory aggravating factors" must be proven beyond a reasonable doubt).

Sometimes caselaw or "[t]he statute on its face may resolve" the elements or means question. *Mathis*, 579 U.S. at 518. Neither party here points to any caselaw that addresses the issue at hand. The statutory text does provide important clues, however. The "dwelling" and "life in jeopardy" statutory components are phrased disjunctively, separated by an "or" and sit in separate clauses that do not modify any other element of the offense. This grammatical structure is notable because elsewhere § 1363 contains a series of "illustrative examples." 18 U.S.C. § 1363

---

[2] As already discussed, *supra* Section II.B, at 3–4, the D.C. Circuit in *Khatallah* was not asked to determine if § 1363's aggravating sentencing factors are elements or means. Thus, the Circuit's observation that "placing a person in jeopardy is an element of the offense" does not dispose of the question here. *See* Mem. Op. at 7–8 (quoting *Khatallah*, 41 F.4th at 625).

(providing that the object of the conduct must be "any structure, conveyance, or other real or personal property"). "[I]f a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Mathis*, 579 U.S. at 518.[3]  Thus, the words "structure," "conveyance," and "other real or personal property" are means of committing the offense.  The enhanced penalty provision is different.  Unlike a list of illustrative examples, there is no common feature that joins the "dwelling" and "life in jeopardy" aggravating factors.  Or, as the Third Circuit put it in *United States v. McCants*, the 20-year penalty provision "states no overarching genus of which [the two components] are species."  952 F.3d 416, 426 (3d Cir. 2020) (analyzing New Jersey robbery statute).  The text and structure of § 1363 thus point towards a finding that each enhanced penalty clause is an element, not a means of commission.

"The nature of the behavior that likely underlies a statutory phrase" is also significant to the divisibility analysis.  *Chambers v. United States*, 555 U.S. 122, 126 (2009), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015).  If statutory alternatives involve significantly different conduct, they are more likely to define different crimes.  *See id.*  Applying this principle, the Fourth Circuit has concluded that two alternative statutory clauses were elements, not means, where "[t]he former is concerned with conduct threatening bodily integrity and safety, while the latter deals only with damage to physical possessions."  *United States v. Allred*, 942 F.3d 641, 650 (4th Cir. 2019).  In that statute, 18 U.S.C. § 1513(b), the alternative clauses were "caus[ing] bodily injury to another person" and "damag[ing] the tangible property of another person[.]"  The court reasoned that "the behavior  typically underlying the causation of

---

[3] At its enactment in 1948, § 1363 contained a longer, more granular list of examples of target property: "any building, structure or vessel, any machinery or building materials and supplies, military or naval stores, munitions of war or any structural aids or appliances for navigation or shipping."  62 Stat. 764, ch. 645 (June 25, 1948).  In 1996, Congress both broadened and condensed the list to its present form to "expand" the types of property covered by the statute. Pub. L. No. 104-132, § 703, 110 Stat. 1294 (Apr. 24, 1996).

bodily injury 'differs so significantly' from that underlying damage to property that those statutory phrases cannot plausibly be considered alternative means." *Id.* (quoting *Chambers*, 555 U.S. at 126). While causing harm to another was a mandate of the former, only nominal property damage was required by the latter. *Id.*

The Fourth Circuit reached a similar conclusion in *United States v. Roof*, 10 F.4th 314 (4th Cir. 2021). There, the defendant was convicted under 18 U.S.C. § 247. One section of the statue made it unlawful to intentionally deface, damage, or destroy religious property because of its religious character, while another section criminalized obstructing another's enjoyment of their free exercise of religious belief, by force or threat of force, including by force against religious property. *Id.* § 247(a)(1), (a)(2). The court there explained that "[w]here the behavior typically underlying damage to property differs so significantly from the obstruction of a person using force or threat of force (resulting in death), we must treat the two as different crimes." *Roof*, 10 F.4th at 403 (internal quotation marks and citations omitted). The court held that the two clauses were separate elements because the "former deals solely with damage to religious real property, while the latter is concerned with conduct that, at a minimum, causes fear of bodily harm so as to obstruct an individual's ability to exercise his or her religious beliefs." *Id.* (internal quotation marks and citations omitted).

The court is persuaded by the behavioral distinctions drawn in *Allred* and *Roof*. Under the "dwelling" provision of § 1363, a defendant is subjected to a 20-year penalty for conduct as minimal as breaking the window of a home, even if no one is present. The "life in jeopardy" component, by contrast, requires the application of the kind of force that poses an *actual* threat to a person's very existence—a person's life must "be placed" at risk. That difference is meaningful. "Conduct that can cause bodily injury, or threaten 'bodily integrity and safety,' is materially

10

different in kind from conduct directed only at 'damag[ing] physical possessions.'" *United Sates v. Melaku*, 41 F.4th 386, 393 (4th Cir. 2022) (interpreting and quoting 18 U.S.C. § 1513(b), a witness retaliation statute that makes it unlawful to engage in "conduct and thereby causes bodily injury to another person or damages the tangible property of another person"). "In fact, conduct that merely causes damage to the property of another may not pose any danger at all to persons not present [or even present] when the damages occurs." *Id.* Accordingly, the materially different types of conduct needed to support § 1363's respective penalty enhancements further establishes them as separate elements.

### 3.

Defendant offers several reasons why the sentencing enhancement provisions should be read as different means of committing the 20-year offense. None is persuasive.

*First*, he cites to two cases presided over by the same judge in this District, in which the court instructed the jury to consider the sentencing enhancement as a single element. *See* Def.'s Mot. at 5–6.[4] But, as the D.C. Circuit stated in *Khatallah*, "[t]hese instructions are irrelevant to the question whether Section 1363 is divisible. Where 'authoritative sources of [federal] law' establish that a federal statute is divisible, we cannot rely on instructions from a single trial to reach a contrary conclusion." 41 F.4th at 633 (quoting *Mathis*, 579 U.S. at 517–19). Similarly, where the statutory text and structure establish that a statute is divisible, the jury instructions of a single trial court, unaccompanied by any divisibility analysis, cannot unsettle this conclusion.[5]

---

[4] *See* Final Jury Instructions, *United States v. Al-Imam*, No. 17-cr-213 (CRC), ECF No. 191 (D.D.C. June 4, 2019); Final Jury Instructions, *United States v. Khatallah*, No. 14-cr-141 (CRC), ECF No. 464 (D.D.C. Nov. 15, 2017).

[5] Defendant also points to pattern instructions from the District of South Carolina, which also seem to treat the sentencing enhancement to be a single element. Def.'s Mot. at 5 & n.3. But a pattern instruction from a single district court, which may or may not have been used in any criminal trial, carries little weight.

*Second*, Defendant argues that because "statutory alternatives carry[ing] different punishments . . . must be elements" under *Apprendi*, the fact that these two statutory alternatives carry the *same* punishment means that they are not elements. *Mathis*, 579 U.S. at 518; Def.'s Mot. at 9. But that feature is not dispositive. "[S]tatutory alternatives can be distinct offenses even if they do not" carry different punishments. *Khatallah*, 41 F.4th at 633; *see also United States v. Harrison*, 56 F.4th 1325, 1333 (11th Cir. 2023) ("[W]hile alternatives carrying different punishments must be elements, it does not follow that alternatives carrying the same punishment are means.") (citing *Spaho v. U.S. Att'y Gen.*, 837 F.3d 1172, 1177 (11th Cir. 2016), which held that statutory provisions carrying the same punishment were divisible elements)); *United States v. Jordan*, 88 F.4th 435, 442 (3d Cir. 2023) ("[T]he converse is not true: even if statutory alternatives carry the same punishments, they may still be elements."); *United States v. Burtons*, 696 F. App'x 372, 378 (10th Cir. 2017) ("[N]othing in *Mathis* suggests that statutory alternatives carrying the same punishment are necessarily means rather than elements[.]").

*Third*, Defendant urges the court to consider the indictment, which charged him with only one offense that did not distinguish between the aggravating factors. Def.'s Mot. at 9–10; Superseding Indictment, Count Five, ECF No. 17, at 2–3. But the court only looks to "the record of a prior conviction" if the authoritative law "fails to provide clear answers[.]" *Mathis*, 579 U.S. at 518. Here, the text and structure of § 1363 provide the answer on divisibility, so the particular wording of the indictment is not relevant.

*Finally*, Defendant seeks to distinguish *Roof* and *McCants* on the grounds that the statutes at issue "each put the relevant subsections in different paragraphs, strongly suggesting they are separate elements, not means." Def.'s Reply at 7. What Defendant says about the structures of those statutes is true. But the courts interpreting them focused more on the differences in conduct

required to violate the alternative provisions rather than their structures.  For instance, in *Roof*, although the court acknowledged the "disjunctive statutory subsections, § 247(a)(1) and § 247(a)(2)," in concluding the statute was divisible, it emphasized that "the behavior typically 'underlying damage to property' 'differs so significantly from' the obstruction of a person using force or threat of force (resulting in death)."  10 F.4th at 403.  Likewise, in *McCants*, the court recognized the "disjunctive three separately enumerated" clauses of New Jersey's robbery statute, but its reasoning focused on the fact that the enumerated clauses were not an illustrative list, but rather descriptions of different types of conduct.  *See McCants*, 952 F.3d at 425–26.  This court's reading of § 1363 takes the same approach.

The court thus confirms its prior holding that 18 U.S.C. § 1363's sentencing enhancement provision is divisible into two elements, the latter of which defines a 20-year felony offense if "the life of any person [is] placed in jeopardy," and denies Defendant reconsideration on this basis.

**B.**

Next, Defendant contends that an enhanced penalty conviction under 18 U.S.C. § 1363 cannot be a "crime of violence" because such offense does not require a state of mind greater than recklessness.  Specifically, Defendant asserts that the 20-year provision applies regardless of a defendant's state of mind; it is a strict liability enhancement.  This is a problem, Defendant claims, because a "defendant could trigger the enhanced penalty provision of putting the life of any person in jeopardy with at most an accidental or negligent mens rea relating to the force used against the person."  Def.'s Mot. at 3 (internal quotation marks omitted).  That concern is misplaced.

**1.**

The Supreme Court has interpreted elements clauses identical or nearly identical to § 924(c)(3) as requiring volitional conduct.  *See Leocal v. Ashcroft*, 543 U.S. 1, 3 (2004)

(interpreting the identically worded elements clause of the term "crime of violence" in 18 U.S.C. § 16); *Borden v. United States*, 593 U.S. 420, 422 (2021) (interpreting the nearly identically elements clause of the term "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1)).[6]  In *Borden*, the Court determined that the phrase "'use of physical force against the person of another' . . . demands that the perpetrator direct his action at, or target, another individual."  593 U.S. at 429.  That statutory text, the Court explained, requires "volitional conduct" directed at a "conscious object."  *Id.* at 431.  Thus, only an offense that contains a state of mind greater than recklessness will satisfy that statutory text.  *Borden* does not, however, require "that the perpetrator act with a specific intent to harm or injure another."  *United States v. Handy*, No. 23-3143, 2023 WL 7277155, at *1–2 (D.C. Cir. Nov. 3, 2023).  Instead, the use of force must only "be 'directed' or 'targeted'" at a person or property, with the requisite mens rea.  *Id*. at *2.

Assuming that Defendant is correct that § 1363's sentencing enhancement imposes strict liability, the statute nevertheless contains the minimum mens rea required to qualify as a "crime of violence."  That is because *Leocal* and *Borden* "require[] a minimum amount of intent to justify treating a *crime* as violent," but they do not "require proof of intent as to the aggravating violent *conduct*" for the offense to constitute a "crime of violence."  *Stuckey v. United States*, 224 F. Supp. 3d 219, 227 (S.D.N.Y. 2016), *aff'd*, 878 F.3d 62 (2d Cir. 2017) (emphasis added).

The Second Circuit's decision in *Stuckey v. United States* illustrates the point.  In *Stuckey*, the court considered whether a New York state robbery statute contained a sufficient mens rea requirement to qualify as a "violent felony" under the ACCA.  Under that statute, third-degree robbery occurs when a defendant "forcibly steals property[.]"  N.Y. Penal Law § 160.15.  That core offense can be elevated to first-degree robbery if the defendant or *another participant* in the

---

[6] "[T]he sole difference between § 16(a) and the elements clause [of the ACCA] is the phrase 'or property,' which brings property crimes within the former statute's ambit."  *Borden*, 593 U.S. at 427.

14

crime "[u]ses or threatens the immediate use of a dangerous instrument" or "[d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." *Id.* New York's highest court interprets the "core robbery offense" as requiring a "culpable mental state," but "strict liability attaches to an aggravating circumstance." *Stuckey*, 878 F.3d at 66 (citing *People v. Miller*, 661 N.E.2d 1358, 1363 (N.Y. 1995)). The defendant in *Stuckey* argued that his first-degree robbery convictions did not qualify as a "violent felony" because an accomplice could commit the aggravating conduct and therefore a defendant's sentence could be enhanced without the defendant himself having intended the conduct. *Id.* at 65, 70–71. Under the defendant's approach, his first-degree robbery convictions could qualify as predicate offenses only if they required that he personally "intended the increased uses of force, that is, the aggravating conduct[.]" *Id.* at 69.

The Second Circuit rejected that position. The court observed that a predicate conviction under the ACCA must satisfy two requirements: "(1) intent (as required by *Leocal*) and (2) sufficiently violent conduct (as required by [*Johnson v. United States*, 559 U.S. 133 (2010)])." *Id.* Importantly, the court said, "the intent and force requirements outlined in *Leocal* and *Johnson* . . . are examined separately." *Id.* at 70. Only an "aspect" of the offense must require the use of physical force; likewise, only an "aspect" of the offense must require the necessary mens rea. *Id.* New York's first-degree robbery statute contained both components. The aggravating conduct supplied the requisite degree of force,[7] while the underlying offense of robbery—regardless of the degree—supplied the requisite mens rea (the intent to "permanently deprive the victim of property by compelling the victim to give up property or quashing any resistance to that act"). *Id.* at 72. That was enough to satisfy the ACCA.

---

[7] The Second Circuit subsequently determined that the base, third-degree offense defined under N.Y. Penal Law § 160.15 meets the conduct requirements of *Johnson*. *See United States v. Ojeda*, 951 F.3d 66, 70 (2d Cir. 2020).

15

The Second Circuit acknowledged that the state robbery statute imposed "strict liability" for the aggravating factors, but explained why that did not matter. The definition of "violent crime" under the ACCA "requires only a threshold intent to engage in criminal conduct." *Id.* at 70. Therefore, an "offense that provides enhanced penalties for a defendant for violent aggravating circumstances under a 'strict liability' regime" does not "require[] additional intent as to the aggravating factor to count as [a] predicate offense." *Id.* at 72. So long as "the intent to commit the underlying" offense is greater than recklessness, the mens rea requirement is present. *Id.*; *accord Lassend v. United States*, 898 F.3d 115, 131 (1st Cir. 2018) ("Our interpretation of the ACCA's force clause is consistent with the Second Circuit," and agreeing that the intent and force requirements of *Leocal* and *Johnson* "are examined separately").[8]

Applying the Second and First Circuit's understanding of *Leocal* and *Johnson* here makes clear that Defendant's offense of conviction has the requisite mens rea to qualify as a "crime of violence." The parties agree that "[t]o commit the substantive § 1363 offense, the defendant must act 'willfully and maliciously' with respect to destroying property[.]" Def.'s Mot. at 3. Like the robbery statute in *Stuckey*, the "requisite intent [under § 1363] remains the same," regardless of whether the charge is the five-year base offense or one of the 20-year felonies. *Stuckey*, 878 F.3d at 70; Def.'s Mot. at 3 (agreeing the base five-year offense provides a "sufficient mens rea"); *see also United States v. Kelly*, 676 F.3d 912, 919 (9th Cir. 2012) (stating that § 1363 requires that

---

[8] The court notes that the Fifth Circuit reached a somewhat different conclusion in an unpublished decision, *United States v. Chan-Xool*, 716 F. App'x 274 (5th Cir. 2017). In that case, the defendant was convicted of two statutes—an underlying offense and a separate statutory sentencing enhancement. The court rejected the government's argument that conduct underlying the sentencing enhancement, which could be violated by acting with mere negligence, could render the offense of conviction categorically a "crime of violence," concluding that because the enhancement "can apply to merely negligent conduct, it cannot qualify as an element involving a use of force that must be at least reckless." *Id.* at 278. *Chan-Xool* is distinguishable from the present case, however, because there the offense of conviction and the sentencing enhancement were contained in two separate statutory provisions. Here, by contrast, § 1363 creates the standard and enhanced-penalty offenses as part of the same statute. Looking elsewhere in the criminal code is not required.

16

a defendant "*intend*[] to destroy or injure any such property") (emphasis added).  Accordingly, any substantive violation of § 1363 cannot be committed with a reckless or a lesser state of mind.

**2.**

That leaves the requisite degree of force.  As to that element, the court reaffirms its prior holding that the least of acts required to place the life of another at risk, while destroying or injuring property, requires a degree of "force capable of causing physical pain or injury."  *Johnson*, 559 U.S. at 140; Mem. Op. at 9–10.  Put differently, while not *all* intentional property destruction under § 1363 involves the use of force as contemplated by § 924(c), the force needed to violate the 20-year offense by placing another's life in danger does meet that standard.

Strictly speaking, Defendant has not sought reconsideration of that holding.  *See* Def.'s Mot.  In his reply brief, however, Defendant does suggest that non-violent force used to destroy or injure property could place the life of a person in jeopardy.  Def.'s Reply at 16–17.  He hypothesizes various scenarios to support that proposition: "turning on a faucet" that causes a flood and structural damage that ultimately places a person's life in danger, "flipping a switch" or snipping a wire that cuts off power to a medical facility that puts patients at risk, and "spray-painting graffiti" on another's property that leads to an angry and physical confrontation.  *Id.*

But the categorical approach "requires more than the application of legal imagination." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).  More compelling, is what the Fourth Circuit has stated, namely, "[c]onduct that can cause bodily injury, or threaten 'bodily integrity and safety,' is materially different in kind from conduct directed only at 'damag[ing] physical possessions," *Melaku*, 41 F.4th at 393; *see also id.* (observing that "statutes easily could require, categorically, the use of violent, physical force against property of another when the crimes involve the potential risk of pain or injury to persons").  Thus, to put the "life of any person is jeopardy"

17

during the act of destroying or injuring property categorically involves "physical force" as defined in *Johnson*.

Defendant therefore was properly convicted of a "crime of violence" for purposes of 18 U.S.C. § 924(c).[9]

## V.

Finally, the court grants Defendant a certificate of appealability ("COA"). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). "The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued." *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam). "[T]he District Court may grant *sua sponte* a certificate of appealability." *Robinson v. Johnson*, 313 F.3d 128, 133 n.12 (3d Cir. 2002).[10] "The certificate of appealability . . . shall indicate which specific issue or issues satisfy" the requisite "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3), (c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing" mandates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court finds that a COA under § 2253(c)(2) is warranted here, given "the absence of controlling Circuit precedent, new guidance from the Supreme Court, and the length of prison exposure at stake[.]" *United States v. Smith*, No. 95-cr-154-8 (BAH), 2022 WL 10449599, at *17

---

[9] As before, the court does not reach the issue of whether § 1363's lesser, five-year felony offense requires the requisite degree of force under *Johnson* to qualify as a "crime of violence."

[10] *See also, e.g.*, *Teti v. Bender*, 507 F.3d 50, 56 (1st Cir. 2007) (recognizing district court's *sua sponte* issuance of COA); *Saunders v. Senkowski*, 587 F.3d 543, 546 (2d Cir. 2009); *Mitchell v. Green*, 922 F.3d 187, 190 (4th Cir. 2019) (same); *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (same); *Clark v. Brown*, 450 F.3d 898, 903 (9th Cir. 2006) (same).

(D.D.C. Oct. 17, 2022) (granting COA in case in which petitioner argued that the predicate felonies were not "crimes of violence" under 18 U.S.C. § 924(c)(3)) (internal quotation marks omitted).

The court certifies the following two questions for appeal:

1.    Whether Defendant's conviction for causing "Injury to a Dwelling and Placing Lives in Jeopardy within the Special Maritime and Territorial Jurisdiction of the United States" in violation of 18 U.S.C. § 1363 is a "crime of violence" for purposes of 18 U.S.C. § 924(c).

2.    Whether the lesser offense of "destroy[ing] or injur[ing]" property under 18 U.S.C. § 1363 has as an element the use of "physical force," as defined in *Johnson v. United States*, 559 U.S. 133 (2010).

## VI.

For the reasons stated, the court denies Defendant's Motion for Reconsideration, ECF No. 138.  A final, appealable order accompanies this memorandum opinion.

Dated:  February 8, 2024

Amit P. Mehta
United States District Court Judge

19